Stanley L. DRENNAN, M.D., Appellant,

v.

Patricia HARRIS (Successor to F. David Mathews), Secretary of Health, Education and Welfare and Blue Shield of California, Appellees.

No. 76–2766.

United States Court of Appeals,
Ninth Circuit.

Sept. 4, 1979.

Ralph C. Curren, Los Angeles, Cal., for appellant.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for appellees.

Before MERRILL and HUG, Circuit Judges, and BOHANON *, Senior District Judge.

\* The Honorable Luther L. Bohanon, Senior United States District Court Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

HUG, Circuit Judge:

Appellant, a physician, seeks judicial review of the determination of the Department of Health, Education and Welfare (HEW) and Blue Shield of California to recoup alleged overpayments made to appellant for medical services rendered by him to elderly patients under the Medicare Program. We find that the district court lacked jurisdiction to consider the appellant's claim and remand this case to the district court with directions to transfer the cause to the United States Court of Claims.

## BACKGROUND

The Medicare Program, 42 U.S.C. § 1395 et seq., consists of two basic parts: Part A, which provides for insurance for hospital services, 42 U.S.C. § 1395c–1395i–2, and Part B, which provides for supplemental medical services, primarily physicians' services, 42 U.S.C. § 1395j–1395w. Individuals covered under Part B can either request reimbursement for payments themselves or assign the right to reimbursement to the physician, § 1395u(b)(3)(B)(ii). Part B is administered through private intermediaries such as Blue Shield, called "carriers," who are authorized to set rates, review claims and make payments on behalf of HEW. 42 U.S.C. § 1395u.

Appellant, Dr. Stanley Drennan, is a medical doctor practicing in California. From 1969 to 1972, Drennan rendered medical services to a number of elderly individuals enrolled under the Medicare program who assigned to appellant their claims for reimbursement. Part of these claims were for Drennan's visits to nursing homes or convalescent homes, designated "extended care facilities" (ECF).

Appellant submitted 811 claims totaling $54,986 for services rendered during 1969, 1970 and January and February of 1971. Blue Shield approved $30,223.50 of these claims for payment. Appellant also submitted claims totaling $30,806 for services rendered in 1971 and Blue Shield approved $17,624.75.

The present controversy arose when the Los Angeles County Medical Association Medical Service Review Committee—District 1 (committee) was requested by the Senate Finance Committee to review appellant's 1969 Medicare practice. Payments are to be made under Part B only for services that are reasonable and medically necessary. 42 U.S.C. §§ 1395x(v) and 1395y (a)(1). Reasonable, customary charges are determined by the carrier. 42 C.F.R. §§ 405.501–405.503. The carriers are charged with the responsibility to "take such action as may be necessary to assure that . . . such charge will be reasonable and not higher than . . . for a comparable service" and to "institute utilization safeguards which include methods for professionally assuring that payments under Part B . . . are for covered services which are medically necessary." 42 U.S.C. § 1395u(b)(3)(B); 42 C.F.R. § 405.-678(a) and (c). The carrier shall "establish methods and procedures for identifying utilization patterns which deviate from medically established norms and bring such patterns to the attention of appropriate professional groups." 42 C.F.R. § 405.678(d). If the carrier concludes that a claimed service is not medically necessary, the carrier is responsible for "taking appropriate action with respect to adjustments or rejection of the claim." 42 C.F.R. § 405.678(c). Because medical issues are involved in determining what are reasonable and necessary services under 42 U.S.C. § 1395y(a)(1), carriers have sought the assistance of professional medical groups in various advisory capacities. The Los Angeles County Medical Service Review Committee is such a group.

On February 4, 1971, after giving notice to Drennan, the committee met and reviewed 129 of appellant's 811 claims for 1969–71. The committee was concerned with the fact that Drennan had, in many instances, billed for weekly ECF visits to his elderly patients, whereas the reasonable and customary practice in the county was a monthly or semi-monthly visit to ECF patients. Drennan was present at this meeting, but it is unclear whether he made a presentation.

The committee recommended that appellant be reimbursed for only one ECF visit per month, with additional ECF visits allowable only if medically indicated with documentation. Drennan's future claims were to be subjected to continual prepayment review until his practice coincided with customary practice in the area.

In March, 1971, Drennan was informed by Blue Shield that due to the committee's recommendations, $4,754.30 would be offset from his current claims. On September 16, 1971, Drennan met with three of the consulting medical advisors for Blue Shield to discuss these offsets. The Medicare Act provides procedures whereby a beneficiary or a physician who has been denied payment of a Part B claim can protest the initial determination of the carrier within six months after notice of the carrier's decision. 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. § 405.801 et seq.; § 405.807(c).

On November 28, 1972, Blue Shield reviewed Drennan's 811 claims submitted for 1969, 1970 and January and February of 1971, and informed appellant that $21,-061.79 would be recouped from him. This recoupment was based on alleged, unnecessary visits which Drennan made to ECF patients. At the time the present dispute arose, there was no statutory authority allowing the carrier to recoup payments made to a physician which were later determined to be medically unnecessary and there were no statutory procedures by which one could protest a carrier's recoupment action. The 1972 Medicare amendments added provisions allowing for recoupment. 42 U.S.C. § 1395gg.

At Drennan's request, his record was reviewed by Blue Shield and the recoupment on his 1969–71 claims was reduced to $16,-792.51. Drennan then requested and was given a fair hearing similar to that provided for review of a carrier's initial determination under 42 C.F.R. § 405.801 et seq. and § 405.820. At the fair hearing, Drennan was allowed to personally present evidence justifying his medical practice. The fair

hearing officer affirmed Blue Shield's recoupment action, with minor adjustments which resulted in a reduction of $291.60 from the total recoupment for the 1969–71 claims.

On July 18, 1973, Blue Shield informed Drennan that 448 of his claims for March-December, 1971 had been reviewed and an overpayment of $5,983.28 had been determined and would be recouped against current payments. A second review reduced this sum to $5,590.48. No fair hearing was requested.

Drennan filed the present action in the district court alleging that the Government had no statutory or common law right to recoupment and that the procedures used by Blue Shield were constitutionally deficient and resulted in a taking of appellant's property without due process of law. Case law decided subsequent to appellant's filing established that the Government had a common law right to recoup Medicare overpayments. *Szekely v. Florida Medical Ass'n*, 517 F.2d 345 (5th Cir. 1975). The district court found that appellant had had an opportunity to submit documentary evidence and to appear in person at the Medical Review Committee meeting on February 4, 1971 and that appellant received a fair hearing regarding the recoupment on the 811 claims. The court held that these hearings "comported with due process." The court also found that it lacked jurisdiction to hear Drennan's challenge to the 448 claims because appellant had not exhausted his administrative remedies.

### DISCUSSION

We do not reach the merits of this appeal, for we find that the district court lacked subject matter jurisdiction to hear Drennan's claim.

■ The Medicare Act provides for judicial review only in certain enumerated circumstances. The Act does not provide for judicial review of determinations of benefits or amounts of benefits under Part B. *Cervoni v. Secretary of HEW*, 581 F.2d 1010, 1015 (1st Cir. 1978); *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283, 290 (8th Cir. 1976); *Szekely*, 517 F.2d at 348; See 42 U.S.C. § 1395ff. Likewise, there is no specific provision for judicial review of recoupment determinations. See *Gallo v. Mathews*, 538 F.2d 1148, 1150 (5th Cir. 1976).

■ In the district court, appellant asserted subject matter jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 and under 28 U.S.C. § 1331 (Federal question). However, since the judgment of the district court, the Supreme Court has, in *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977), foreclosed the APA as a basis for jurisdiction, holding that "the APA is not to be interpreted as an implied grant of subject matter jurisdiction to review agency actions." Thus, 5 U.S.C. §§ 701–706 cannot provide subject matter jurisdiction in the present case. *Cervoni*, 581 F.2d at 1015.

■ Similarly, 28 U.S.C. § 1331 does not provide subject matter jurisdiction in the district court to review the determination regarding Drennan's claims for payment. Section 205(h) of the Social Security Act, 42 U.S.C. § 405(h), incorporated into the Medicare Act by 42 U.S.C. § 1395ii, provides:

> The findings and decisions of the Secretary after a hearing will be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of title 28 to recover on any claim arising under this subchapter.

Because § 1331 was previously codified as a subsection of § 41 of Title 28, § 405(h) precludes review under federal question jurisdiction. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is not incorporated into the Medicare Act. Under § 405(g), an individual may obtain judicial review of a final decision of the Secretary of HEW made after a hearing, so long as notice and time limitations are met. Sec-

tion 405(g) provides the review machinery referred to in § 405(h) "as herein provided."

In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court held that § 405(h) precluded district court review of certain eligibility requirements under the Social Security Act. The Court not only held that § 1331 review of the merits of the agency determination was unavailable, but also that constitutional claims were precluded. *Salfi*, 422 U.S. at 762, 95 S.Ct. 2457; *Dr. John T. MacDonald Foundation v. Califano*, 571 F.2d 328, 331 (5th Cir. 1978). However, the Court did hold that § 405(g) provided jurisdiction to hear petitioner's statutory and constitutional claims. *Salfi*, 422 U.S. at 763, 95 S.Ct. 2457.

*Salfi* dealt with the application of § 405(h) within the context of a determination under the Social Security Act, not the Medicare Act. However, *Salfi's* interpretation of § 405(h) is directly applicable to conflicts arising under the Medicare Act and the courts have applied *Salfi* to a broad variety of disputes arising under the Medicare Act. See *Cervoni*, 581 F.2d at 1010; *St. Louis University*, 537 F.2d at 289; *South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910 (2d Cir. 1976); *Ass'n of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C.C.A.1977); *Hazelwood Chronic & Convalescent Hospital v. Weinberger*, 543 F.2d 703 (9th Cir. 1976).

It is clear that in the present case *Salfi* would preclude district court jurisdiction under § 1331 to review the agency's or Blue Shield's determination of the amount of benefits to be paid to Drennan and the amount of recoupment to be assessed against Drennan. See *Daytona Beach General Hospital, Inc. v. Weinberger*, 435 F.Supp. 891, 899 (M.D.Fla.1977).[1] However, Drennan also asserts a constitutional claim: He argues that he was deprived of his property without due process of law.

We must therefore consider whether *Salfi* would preclude the district court from hearing Drennan's constitutional claims based upon § 1331. The Supreme Court has recognized that a statute precluding all review of constitutional claims would raise a serious question of the validity of the statute. *Sanders*, 430 U.S. at 109, 97 S.Ct. 980; *Salfi*, 422 U.S. at 762, 95 S.Ct. 2457; *Johnson v. Robinson*, 415 U.S. 361, 366–67, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *South Windsor Convalescent Home, Inc.*, 541 F.2d at 913; Gallo v. Mathews, 538 F.2d at 1150; *Hazelwood Chronic and Convalescent Hospital*, 543 F.2d at 707.

This question was raised in a case similar to the present case in the Fifth Circuit, *Dr. John T. MacDonald Foundation v. Califano*, 571 F.2d 328 (5th Cir. 1978). There the court, sitting *en banc*, held that § 405(h), which is incorporated into § 1395ii of the Medicare Act, does preclude all review of the Secretary's decisions by the federal district courts brought under § 1331, including constitutional claims. However, the Court there held that the difficult question of whether all judicial review of constitutional claims may be foreclosed is avoided, since jurisdiction has been held by the Court of Claims to exist in that court. *Whitecliff, Inc. v. United States*, 536 F.2d 347, 210 Ct.Cl. 53 (1976). The Fifth Circuit in *MacDonald*, thus remanded the case to the district court to dismiss with directions to transfer the cause to the United States Court of Claims. 571 F.2d at 332. This procedure has been approved and followed by our court. *Sierra Vista Hospital, Inc. v. Califano*, 597 F.2d 200 (9th Cir. 1979).

We find that the disposition suggested by *MacDonald* is the proper one. Accordingly, we remand this case to the district court with instructions to dismiss and transfer the cause to the court of claims.

1. We do not reach the question of whether mandamus jurisdiction under 28 U.S.C. § 1361 is precluded in this case, since jurisdiction was not sought under that section. *See Elliott v. Weinberger*, 564 F.2d 1219 (9th Cir. 1977). However, we note that there is considerable difference between the statutory Social Security benefits involved in *Elliott* for which recoupment was sought and the benefits for professional medical services involved in *Drennan*. At the core of the *Drennan* claim is the basic determination of reasonableness of charges for medical services, for which § 405(h) as incorporated in § 1395ii, precludes judicial review.